**Henry KRAJEWSKI and Jesse Krajewski, Plaintiffs,**

**v.**

**Helen H. BLAIR et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Sept. 20, 1972.

Joseph Donald Craven, Wilmington, for plaintiffs.

Jay Paul James, of Morris, James, Hitchens & Williams, Wilmington, for defendants Helen H. Blair and Edward J. Blair.

Frank J. Gentile, Jr., Wilmington, for defendant Kosciuszko Savings and Loan Association.

SHORT, Vice Chancellor:

Alexander Krajewski died at age 88 on May 9, 1970. He was survived by three children: two sons, Jesse and Henry, and a daughter, Mrs. Helen B. Blair. After the death of his wife on May 23, 1964, decedent lived with and was cared for by the Blairs until his death. During those last six years of his life the decedent made several generous gifts to each of his children. The last such transfer was made on March 11, 1969, when the decedent transferred to Helen 40 shares of stock in the Kosciuszko Savings and Loan Association (the Association). Helen cancelled the shares and received proceeds of $4,000. This last transfer is central to the present litigation.

Helen and Henry were named co-executors in the decedent's will, but neither has been appointed to office. The will has been recorded with the Register of Wills, but administration of the estate has gone no further.

Henry and Jesse brought this action. They allege that Alexander Krajewski was mentally and physically incompetent and in fear of and under the domination and control of Helen for at least some time prior to his death. They charge that Helen and the Association, through its secretary, Alexander Drupieski, took advantage of the decedent's incompetence, and defrauded him in the transfer of the 40 shares referred to above.

Plaintiffs seek two injunctions directed to the Register of Wills, the first prohibiting him from appointing Helen a co-executor of Alexander Krajewski's estate, and the second directing him to appoint Henry sole executor. Further, they ask that Helen Blair be required to account for all assets of the decedent which came into her hands, or over which she had control, between May 23, 1964 and May 9, 1970, and that, pending the appointment of an executor, the Association be required to pay into court

the value of the 40 shares transferred to Helen.

█ The defendants Helen and Richard Blair, and the Association have moved for summary judgment upon affidavits and depositions. This is the decision on those motions. In considering the motions it is fundamental that the defendants have the burden of demonstrating that there is no dispute as to any possible issue of fact material to any valid legal theory advanced by plaintiff. E. I. duPont de Nemours and Co. v. American Potash and Chemical Corp., 41 Del.Ch. 533, 200 A.2d 428 (1964).

I consider first the Association's motion for summary judgment. Plaintiffs say that the Association, through its secretary, Alexander Drupieski, connived with Helen and actively participated in the allegedly fraudulent transfer to her from the decedent of 40 shares of Association stock, and the subsequent sale thereof.

█ Assuming that Helen fraudulently induced or coerced her father to transfer the stock, the Association cannot be held liable unless it is shown that it participated in that fraud or coercion or knew of it and breached its equitable duty in effecting the transfer in the face of that knowledge. See Dick v. Reves, 206 A.2d 671 (Del.Supr. 1965). Plaintiffs must show that the Association, through its agent Drupieski, somehow participated in the fraud.

The plaintiffs allege that Drupieski, knowing of the decedent's mental and physical incompetency, forged the latter's name on the documents at the transfer. They also say that Drupieski connived with Helen and "aided and abetted" her in selling the stock back to the Association; however, no evidence as to the alleged connivance or as to any misconduct on Drupieski's part in the subsequent sale has been offered, except such as might be inferred from what the parties did when the transfer was made. The circumstances surrounding the transfer are therefore crucial to the plaintiffs' case.

It is undisputed that on March 11, 1969, Helen and her father went to Drupieski's office, that Drupieski wrote the father's name on the transfer papers because he was too feeble to do so himself, and that the father made an "X" for his mark below Drupieski's writing of his name. Drupieski's statement that he signed the decedent's name at the latter's request is not controverted. On these facts, it would appear that Drupieski signed the decedent's name as his agent and in his presence, and that there was therefore no forgery. However, there remains the question of whether Drupieski acted in the face of knowledge of the decedent's alleged mental incompetence. Was Alexander Krajewski's request that of a senile old man acting under duress and did Drupieski know that it was?

Excepting the decedent, there were but three witnesses to the transaction: Helen, Drupieski and Julia Moran, Drupieski's secretary, who was asked to witness the decedent's making his mark. The version of the events offered by Helen's affidavit and the depositions of Drupieski and Julia Moran is that Drupieski asked the decedent if he knew what he was doing, that decedent replied that he did and that he wanted to make the transfer as a gift to Helen, and that it was apparent that he knew what he was doing.

Jesse and Henry allege in their affidavits that some months later Drupieski told them quite a different story. They say that Drupieski came to them and said that he was worried and concerned about what had happened. He is alleged to have said, "It's a shame what happened to your father and his money . . . The way Helen got his money from him." Further, Jesse and Henry say that Drupieski told them that when he asked the decedent if he knew what he was doing, Helen interrupted before her father could reply and said, "It's his money; he can do what he wants with

it." They also allege that Drupieski told them that the decedent was tense and nervous.

■ Drupieski flatly denied that he ever had such conversations with the plaintiffs. Thus, there is undeniably an issue of fact: Did the alleged conversations occur? This is precisely the sort of factual controversy the Court must not decide on a motion such as this. The question then is whether this issue of fact is material. I think that it is. The Association argues that the money was in fact the decedent's property to do with as he wished and that therefore, even if the conversations did occur, the statement attributed to Helen is irrelevant and the issue is not material. However, if the conversations with Jesse and Henry actually occurred, they tend to reflect on the credibility of Drupieski's deposition statements, and further, if the transaction itself occurred in the manner which Drupieski is alleged to have described to the brothers, then the evidence may show that the decedent was acting under duress and that Drupieski knew it. Thus, there remains an issue of material fact, and, on this motion, plaintiffs are entitled to the benefit of all favorable inferences from the disputed facts. Therefore, the Association's motion for summary judgment is denied.

■ I next turn to the Blairs' motion for summary judgment. Of course, the same doubt which the affidavits of Jesse and Henry raise as to what happened when the transfer of the Association stock was made applies to the Blairs' motion. But there are several other issues which I do not regard as being susceptible to ruling as a matter of law on the present record. For the purposes of this ruling, these need not be exhaustively detailed, but they are serious enough to move me to exercise my discretion in denying a motion for summary judgment: The establishment of a fiduciary relation between Helen and her father is fundamental to the plaintiffs' case,

and plaintiffs have made a showing that such a relationship arose at least at some point during the time period here in question. It is not disputed that Helen held a power of attorney from her father, that his mental competency deteriorated during at least the last year of his life, and that for the last six years of his life the decedent was generally dependent upon the Blairs for his care and sustenance. Taking these undisputed facts together, and considering the decedent's age, I cannot say as a matter of law that there was no fiduciary relationship here. Nor is it necessarily the case, as the Blairs assume, that a fiduciary relationship could have arisen only at such time as the decedent became mentally incompetent. Thus, there are several fact issues which may become relevant and material and which have not been resolved on the present record. Among these are the matter of the large sum of cash which Jesse and Henry allege Helen received in their presence from the decedent shortly after his wife's death, the disposition of the funds in the decedent's savings account, and the disposition of the monthly mortgage and social security payments he is alleged to have received. In short, there are material issues upon which the plaintiffs are entitled to be heard, and the Blairs' motion must therefore be denied.

■ Next, I consider the defendants' contentions that this court has no jurisdiction to enjoin the Register of Wills as the plaintiffs ask, and that the plaintiffs in this case are not the real parties in interest. Because Helen has represented to this court her willingness to stand aside and allow her brothers to be appointed executors of her father's estate, the issue of the court's jurisdiction to order such action is moot and I need not consider it further.

■ However, defendants are correct in their argument that the executor or administrator is the proper party to assert claims in behalf of a decedent's estate. 31 Am.Jur.2d, Executors and Administrators,

§§ 714–15, 719. Nevertheless, Chancery Rule 17, Del.C.Ann., provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed for the substitution of such party. I therefore allow plaintiffs 90 days from the date of this opinion within which to comply with Rule 17, and grant leave to defendants to renew their motion to dismiss at the expiration of that time if there has been no compliance.

Finally, I point out that plaintiffs' compliance with Rule 17 "shall have the same effect as if the action had been commenced in the name of the real party in interest." Chancery Rule 17. It is for this reason that I have in this opinion gone beyond the question of proper parties to the substance of the defendants' motions.